IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD DOUGLAS,<br><br>  Plaintiff,<br><br>  v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE CO.; WAL-MART STORES, INC. EMPLOYEE LONG TERM DISABILITY BENEFITS PLAN; AND DOES 1–50,<br><br>  Defendants. | No. C 05-03408 WHA<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this action seeking benefits under a long-term disability policy, defendants Hartford Life and Accident Insurance Co. and Wal-Mart Stores, Inc. Employee Long Term Disability Benefits Plan move for summary judgment. Defendants are not entitled to judgment as a matter of law, even assuming that the Court must review their denial of benefits under an abuse-of-discretion standard. The motion therefore is **DENIED**.

**STATEMENT**

Wal-Mart Stores, Inc. bought a long-term disability insurance policy from Hartford Life and Accident Insurance Co. for its employees' benefit. Insured employees were entitled to payments under the group plan if they became unable to work due to injury or sickness.

The policy stated: "**INTERPRETATION OF POLICY TERMS AND CONDITIONS** The Hartford has full discretion and authority to determine eligibility for

benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." After an initial period of benefits, Hartford would continue paying a worker's benefits so long as he or she was "prevented from performing the essential duties of *any occupation* for which [the employee] is qualified by education, training or experience. Even if the employee stopped working for Wal-Mart during that latter period, he or she would continue getting benefits "as long as [the worker was] entitled to benefits" (Administrative R. (hereinafter "AR") 16, 23) (emphasis in original).

Plaintiff Donald Douglas worked as a pharmacist in a Wal-Mart store in Sonoma County. He was enrolled in the disability-insurance plan. On March 14, 2003, he was traveling in an automobile when it collided with an oncoming vehicle. His elbow was broken. On September 12, 2003, Hartford approved his application for long-term disability benefits, effective on the date of the accident (AR 224, 250, 260–61, 270).

On March 29, 2004, one of plaintiff's doctors, Mark Schakel, made this note: "I have extended . . . disability for another couple of months. . . . The patient in two months' time will have repeat x-rays . . . . I plan on returning him to work sometime around that time" (AR 178).

On June 25, 2004, Hartford learned that plaintiff had quit his job. One of the insurer's examiners spoke to plaintiff that day. Her notes from then state "elbow is fine, but arth[ritis] in knees, symptoms in the hips, needs hips x-rayed, needs to talk to him about that." On July 20, 2004, Schakel examined plaintiff. The physician noted that the elbow "has occasional pain" but "overall . . . seems to be doing well. [Plaintiff] has some residual stiffness in his wrist and occasional pain here as well." The doctor also stated that there was "no evidence of significant posttraumatic arthritis." The plan was for plaintiff "to monitor his symptoms and return" to Schakel "only if he is having further or worsening problems" (AR 98, 160).

On July 23, Hartford sought "clarification of Mr. Douglas's current functionality" from Schakel. The letter did not inform the physician of plaintiff's statement that he had arthritis in his knees and "symptoms in the hips." There is no evidence that Schakel ever knew of plaintiff's knee and hip problems. In the letter, Hartford told the doctor that plaintiff had said "his elbow was fine and is not his disabling condition." The insurer asked whether "[plaintiff

2

is] able to perform his job as Pharmacist at this time?" Schakel answered simply "yes" as to whether plaintiff could perform his job. He signed the letter August 11, 2004, and returned it to Hartford two days later (AR 111, 161–62). Hartford did not make inquiry of Dr. Richard Powers, whom the record before it showed was also treating plaintiff.

In a letter dated October 5, 2004, Hartford informed plaintiff that it would not pay further benefits, effective September 30, 2004. It justified its decision by noting that Schakel had released plaintiff to work as a pharmacist. Hartford said that the release meant he no longer met the definition of totally disabled (AR 143–46).

Plaintiff appealed the decision in a letter dated November 4, 2004. He stated:

> I currently have a problem with my hips (particularily [sic] my left hip). I am experiencing a deep ache and tingling down my leg. This situation makes it difficult for me to walk or be on my feet for longer than a few minutes at a time. I also have bilateral prothsetic knee replacements that makes movement difficult [sic]. I am seeing my primary care physician, Dr. Richard Powers, for this problem

(AR 135).

In response, Hartford notified plaintiff that it had received his appeal. It did not inform him of any further action he would need to take to bolster his appeal, nor of any additional evidence that would help him, such as documentation of disability due to knee and hip problems prior to August 11, 2004. In a second letter between the appeal and the decision upon it, Hartford asked plaintiff to provide "the additional medical information from Dr. Powers that you referenced in your appeal letter," apparently a reference to documentation of Powers' diagnosis and treatment of plaintiff's arthritis (AR 130, 134).

Twenty days after the date of that second letter, plaintiff saw Powers. The doctor wrote a letter the same day, December 23, 2004, stating that:

> [plaintiff's] ability to resume his former work as a pharmacist at Wal-Mart is severely compromised by the degenerative joint disease affecting especially now his left hip. Bilateral hip pain makes it difficult for him to arise from a chair, makes it impossible for him to stand on his feet for periods of more than a few minutes . . . and thus he would not be able to carry out the duties of the pharmacist. ¶ His elbow no longer disables him . . . . His disabling condition is now his hips

(AR 129). Plaintiff and Hartford did not communicate further until January 24, 2005.

3

On that date, Hartford upheld its decision to end benefits. It stated:

> Our 10/4/04 determination [to end benefits] was based on your 3/29/04 office with your physician, Dr. Mark Sackel, in which he would extend your disability for additional couple months. Therefore, as of 6/1/04 you were released to your own occupation of Pharmacist. . . . [Y]ou were released to your own occupation on 6/1/04 from your own physician.
>
> Dr. Sackel . . . responded on 8/10/04 that you could perform work within your occupation at Wal-Mart . . . .
>
> As part of your appeal, you have written a letter . . . . Also, you have provided a Medical Letter from Dr. Richard Powers which indicates your first visit was 12/23/04 . . . .
>
> The medical from Dr. Richard Powers, 6 months and 3 months beyond this period would not support what level of functionality you had on 6/1/04 or 10/5/05 (actual termination of benefits). . . . Dr. Powers himself cannot provide additional medical evidence or address your condition 6 months or 3 months prior, since he did not initially see you until 12/23/04

(AR 122–23) (all grammatical and spelling errors in original).

This letter denying the appeal was infected with error. Hartford's letter terminating benefits was written October 5, not October 4. In the earlier letter, Hartford did not base its decision on the March 29 office visit. It stated instead that it had based its decision "on policy language" and on Schakel's decision to clear plaintiff for work. Also contrary to the letter, Schakel did not release plaintiff for work on June 1, 2004. He released plaintiff for work on August 11, 2004. Furthermore, the letter from Powers did not indicate that plaintiff's *first* visit with him was December 23, 2004. Plaintiff had listed Powers as being one of his doctors during the period June 2001 through July 15, 2003 and also in the eighteen months prior to January 23, 2004. In addition, plaintiff stated on November 4, 2004, that "I am seeing . . . Dr. Richard Powers[] for this problem [hip and/or knee difficulties]." That was forty-nine days before the December 23 letter by Powers (AR 135, 200–01, 263). The decision placed emphasis on the fact that the Powers letter used the present tense rather than the past tense to describe the disability. It seems clear, as was stated at the hearing, that Powers would have provided a letter covering both bases had Hartford inquired.

Plaintiff filed a complaint against defendants August 23, asserting violation of the Employee Retirement Insurance Security Act (ERISA). *See* 29 U.S.C. 1132(a)(1)(B)**.**

4

**ANALYSIS**

Summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c), (e). A nonmoving party who bears the ultimate burden of proof at trial must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The parties to the instant action agree that there are no issues about material facts and that the administrative record is the entire universe of evidence.

ERISA beneficiaries and participants can bring actions to recover benefits, to enforce their rights under the plan and to clarify their rights to future benefits. 29 U.S.C. 1132(a)(1)(B). The parties agree that the policy here is covered by ERISA.

### 1. STANDARD OF REVIEW.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the authority is properly conferred, courts overturn plan decisions only when the administrator or fiduciary abused its discretion. *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000).

The parties dispute whether Hartford's decision is subject to *de novo* or the more deferential standard. For purposes of this motion only, the Court assumes (without finally deciding) that the deferential standard applies. A fiduciary abuses its discretion when it renders decisions without explanation, construes provisions of the plan in a way that conflicts with its plain language or relies on clearly erroneous findings of fact in making benefit determinations. *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir. 1993). Deference to the fiduciary's decision is required unless it was "so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law [sic]" or was "not grounded on any reasonable basis." If the decision was a good-faith, reasonable interpretation

of the plan, it must be upheld. *Oster v. Barco of Cal. Employees' Ret. Plan*, 869 F.2d 1215, 1218 (9th Cir. 1988).

### 2. THE MERITS.

Since he ceased being an employee, Douglas would remain eligible for disability benefits only so long as he was in fact disabled. If there was any interruption of his disability status, then the plan terminated as to him. Both sides seem in agreement on this. The key issue is whether his disability status was interrupted in August 2004.

Hartford sought to justify its decision to deny plaintiff's appeal by making several erroneous statements and by advancing several conclusions that were not supported by any evidence. These included (1) the statement that the "10/4/04 determination was based on your 3/29/04 office visit with your physician . . . in which he would extend your disability for additional couple months" [sic], (2) that "as of 6/1/04 you were released to your own occupation of Pharmacist . . . [by] "your own physician,"(3) that "as of 6/1/04 you were capable of medium-level work" and (4) that Powers "did not initially see you until 12/23/04" (AR 122–23). All of these statements were wrong.

Schakel said on March 29, 2004, merely that he *planned* on "returning [plaintiff] to work" in about two months. Hartford acts as if this statement was a time bomb that went off automatically on June 1, ending plaintiff's eligibility. But Schakel was merely predicting the future. The doctor noted that, in two months, plaintiff would need a "reevaluation," suggesting that a return to work was not a foregone conclusion. Furthermore, the doctor had previously made an inaccurate predication about when plaintiff would return to work, forecasting on February 26, 2004, that plaintiff would be able to return to work within six weeks (*i.e.*, by mid-April). In addition, Hartford itself sought clarification on July 23 about whether plaintiff was ready to go back to work, thus implying that it did not know. This fact suggests that the appeal decision's rationale based on the March 29 visit was a post hoc rationalization, albeit one that does not make sense. Furthermore, Hartford stated erroneously in its appeal decision that the March 29 statement was the basis of its original termination of benefits. In fact, the March 29 statements were never mentioned in the initial termination letter.

6

The appeals decision also erroneously discounts plaintiff's treatment by Powers. Hartford stated that Powers did not treat plaintiff until December 23, 2004. That was not true. Powers had seen plaintiff for the first time on July 15, 2003, at the latest, and possibly as early as June 2001 (AR 200–01). Plaintiff was seeing Powers on November 4, 2004, for his hip and knee difficulties. Hartford had undisputed evidence of all these facts when it made its appeal decision.

When Hartford made the appeals decision, it had reason to suspect that plaintiff was disabled by his knee and hip problems at the time Schakel released him for work. Defendants conceded at the hearing that, if plaintiff was disabled by those arthritic conditions when Schakel released him to work on August 11, benefits should not have been terminated. The evidence suggesting a second disability were: (1) plaintiff's statement dated June 25, 2004, that he had arthritis in his knees, "symptoms in the hips" and needed to have his hip X-rays; (2) plaintiffs' letter dated November 4, 2004, to Hartford describing both a "deep ache and tingling" in his leg that made it difficult to walk or to be on his feet "for longer than a few minutes at a time" and difficulty moving because of "bilateral prothsetic [sic] knee replacements;" and (3) Powers' letter dated December 23, 2004, stating unequivocally that plaintiff was disabled and could not work.

Despite this evidence, Hartford did no further investigation. They did not tell plaintiff that he would need to prove the disabling nature of his arthritis as of August 11, 2004. They did not contact Powers for more information, despite knowing that he had been treating plaintiff for years and therefore might have detailed records supporting or refuting the claim to arthritic disability in the summer of 2004. It was a breach of Hartford's fiduciary duty and an abuse of its discretion to deny the appeal without at least making further investigation.

This conclusion is required by ERISA regulations. Whenever an ERISA insurance plan makes an "adverse benefit determination," it must provide the claimant with a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," and must do so "in a manner calculated to be understood by the claimant." 29 C.F.R. 2560.503-1(g)(1)(iii). In the instant

7

case, Hartford did not obey this regulation. It knew that plaintiff would lose his appeal if he could not prove that he was disabled by the arthritis during the summer of 2004. But Hartford kept him in the dark.

Also, Hartford's appeal process was not a "full and fair review," as required by 29 C.F.R. 2560.503-1(h)(1). Although Hartford had a catchall phrase in its termination letter, claiming to have reviewed plaintiff's entire file, its list of particular items considered made no mention of the statement by plaintiff in June that he had knee arthritis, hip "symptoms," and needed a hip X-ray. Without clearly considering that statement, the review was neither "full" nor "fair."

*Gaither v. Aetna Life Insurance Co.*, 394 F.3d 792 (10th Cir. 2004), is instructive. There, the claimant had been put on leave due to a disabling addiction to painkillers used to treat cancer pain. The plan denied his application for benefits on the ground that there was "inadequate documentation of functional disability" during a particular three-month period. The Court found that the ERISA fiduciary had been presented with significant evidence that the plaintiff was disabled during the relevant period, but had failed to follow up with a proper investigation and had failed to inform the plaintiff clearly of the period during which he had to prove that he had been disabled. The court held that "An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter. Fundamentally, what was missing in [the plaintiff's] case was a real response to his claim to be disabled because of narcotics use. . . . [The fiduciary did not give] fair warning that [the plaintiff] needed to provide evidence of drug use during the earlier period." *Id.* at 795, 808–09.

In the instant action, Hartford did not fulfill its fiduciary duty to investigate plaintiff's claim properly. It did not explain to him what he needed to prove in order to get benefits. To deny plaintiff his benefits without first doing these two things was an abuse of discretion.

Defendants claim that the evidence of an arthritic condition was not enough to require a different decision on plaintiff's benefits. That misses the point. The evidence was enough to trigger a duty on Hartford's part to investigate more fully whether or not that arthritic condition was disabling in August 2004.

8

The Court also notes Hartford's argument that plaintiff was not entitled to benefits because he was not under the continuous care of a physician. No such requirement of continuous care applied to plaintiff's claim. Any other interpretation would conflict with the plain terms of the policy. The relevant provisions state:

> **Total Disability or Totally Disabled** means that: (1) during the Elimination Period; and (2) for the next 12 months, you are prevented by: (a) accidental bodily injury; (b) sickness; (c) Mental Illness; (d) substance abuse; or (e) pregnancy, from performing the essential duties of your occupation, and are under the continuous care of a Physician . . . . ¶ After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience

(AR 16) (emphasis in original). At the time that plaintiff was deemed ineligible for benefits, August 11, 2004, he was beyond the elimination period and the initial twelve months. Therefore, only the second quoted paragraph applied to plaintiff. Unlike the rules of the earlier period, the requirements of the later period did not include being under continuous doctor's care.

## CONCLUSION

Defendants abused their discretion by terminating plaintiff benefits without first conducting a more thorough investigation into his apparent disability due to arthritis in his knees and hips and/or advising plaintiff of the specific type of information needed to perfect his claim. Defendants' motion therefore is **DENIED**. There are no disputed facts; both sides stand on the administrative record. Because this order holds that defendants abused their discretion, it would be a mere formality to require plaintiff to move for summary judgment before remanding this case. This matter therefore is remanded to the plan fiduciary for further investigation and a full review, complete with another appeal opportunity if plaintiff's claim again is denied.

**IT IS SO ORDERED.**

Dated: May 22, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9